**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JANIE MAE BRYANT                                                                    PLAINTIFF

V.                                      NO. 4:08CV02910 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                          DEFENDANT

**MEMORANDUM AND ORDER**

### I.  Introduction

Plaintiff, Janie Mae Bryant, has appealed the final decision of the Commissioner of the Social Security Administration (the  "Commissioner") denying her claim for Disability Insurance Benefits ("DIB").  Both parties have filed Appeal Briefs (docket entries #10 and #12), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g).  While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On April 10, 2006, Plaintiff filed an application for DIB, alleging disability since February 28, 2006. (Tr. 39-43.) Plaintiff alleged that she was disabled due to arthritis and pain in her ankles, knees, and hands. (Tr. 63, 123.) After Plaintiff's claim was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ"). On September 17, 2007, the ALJ conducted an administrative hearing, where Plaintiff testified. (Tr. 115-29.)

At the time of the administrative hearing, Plaintiff was 51-years old and had a high-school education. (Tr. 118.) Her past relevant work consisted of shotshell loading at Remington Arms. (Tr. 119.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.* at § 404.1520(b).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(a)(4)(ii). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(4)(iii).[2]  If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(a)(4)(iv).  If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded. *Id.*

In his April 25, 2008 decision, the ALJ found that Plaintiff: (1) met the Act's insured status requirements; (2) had not engaged in substantial gainful activity since the alleged onset date; (3) had a "severe" impairment of knee osteoarthritis; (4) did not have an impairment or combination of impairments meeting a Listing; (5) was not fully credible; (6) could not perform her past relevant work as a shotshell loader; (7) had the RFC to perform the full range of medium work activity; and (8) based on the Medical-Vocational Guidelines, could perform other work in the national economy. (Tr. 13-18.)   Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 18.)

On August 28, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 4-6.)  Plaintiff then filed her Complaint appealing that decision to this Court. (Docket entry #2.)

---

[2]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(a)(4). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

## II. Analysis

In Plaintiff's Appeal Brief (docket entry #10), she argues that the ALJ erred: (1) in assessing her RFC for medium work; and (2) in assessing her credibility.  For the reasons discussed below, the Court concludes that Plaintiff's arguments have no merit.

### A.    Hearing Testimony and Medical Evidence

Plaintiff started working as a shotshell loader for Remington Arms in July of 1975.  (Tr. 47.) Her job involved standing and climbing on a machine all-day long.  (Tr. 119.)  As of February 28, 2006, she could no longer perform her job because of the "cartilage in my knee."  (Tr. 119.)  At one time, Plaintiff had a five-year perfect attendance record, but toward the end of her career she often missed work.  (Tr. 120.)  She testified that she retired from Remington Arms, and she began receiving retirement benefits three months after she left.  (Tr. 128.)

Plaintiff testified that Dr. Rooney performed surgery on her left knee in 2004.  (Tr. 120-21.) Plaintiff had a minor surgery on her right knee in 2006.  (Tr. 121.)  Plaintiff needed another surgery but could not afford it.  (Tr. 121.)

Plaintiff described being in constant pain.  (Tr. 121-22.)  At one time she took Hydrocodone but was taking over-the-counter pain medications at the time of the hearing.  (Tr. 122.)  She had arthritis in her ankles, knees, and hands.  (Tr. 123.)  Plaintiff experienced pain, numbness, and swelling in her ankles and knees.  (Tr. 123.)

Plaintiff could sit for 15 to 30 minutes before she had difficulty.  (Tr. 124.)  She could stand for 15 minutes.  (Tr. 124.)  Plaintiff used a cane, but it was not prescribed by a doctor.  (Tr. 125.) Plaintiff could lift 5 to 10 pounds.  (Tr. 125.)  Plaintiff had problems with climbing and bending, and had weakness.  (Tr. 126.)

Plaintiff could still drive.  (Tr. 126.)  She washed dishes and made her bed, but did not cook

for herself as much as she used to.  (Tr. 127.)

On March 2, 2006, orthopedic specialist Dr. Thomas Rooney wrote the following letter to

Dr. B.E. Holmes concerning Plaintiff:

> Janie has been having pain and swelling in her right knee now for about 9 months.  It has gotten worse the last month.  She has difficulty squatting, climbing stairs and being up on it all day.  The knee does not lock or give way.  It does wake her up at night.
>
> On physical examination of the right knee, there is mild effusion.   Tenderness posteromedially. Positive Shear test. Forced extension is quite painful. Flexion is full.  She does have some popliteal pain, but I don't feel a cyst.  Ligaments are stable.  She has good pedal pulses and mild pitting pretibial edema.
>
> She is retired from Remington after 30 years.
>
> X-rays of the knees are normal.
>
> I aspirated 5cc of clear fluid, injected Xylocaine, Marcaine and Celestone.  Placed her on exercises.
>
> If this does not give adequate relief then she understands she will need to consider arthroscopy.
>
> Thanks for letting me see this very nice lady again.

(Tr. 90-91.)[3]  On June 7, 2006, a state agency physician, Dr. Jerry Thomas, completed a Physical

Residual Functional Capacity Form after a review of Plaintiff's medical records.  (Tr. 97-104.)

Dr. Thomas assessed Plaintiff to have the physical RFC for medium work.  (Tr. 98-101.)

---

[3]Dr. Rooney's March 2, 2006 letter is the only medical evidence from a treating or examining source cited by the parties.  The only other medical evidence in the administrative record consists of a few pages of lab results (Tr. 108-111), some pharmacy records (Tr. 84-85), and some handwritten physician's notes that are for the most part illegible. (Tr. 92-93, 107.)

**B.      Plaintiff's Points for Reversal**

**1.      The ALJ Erred In His RFC Assessment**

Plaintiff argues that the ALJ improperly assessed her RFC to perform the full range of medium work because Dr. Rooney indicated that: (1) she suffered from osteoarthritis in the knees; (2) she had difficulty squatting, climbing, and standing for any length of time; and (3) Plaintiff had effusion of the right knee, tenderness posteromedially, and a positive Shear test.  (Docket entry #10, *Pltf's App. Brf.* at 7.)  Plaintiff also relies on her self-report of "multiple surgical procedures on her knees."  *Id.*  According to Plaintiff, the preceding evidence establishes that she could not perform the full range of medium work activity, which involves the ability to stand for six hours in an eight hour-day and "flexibility of the knees."  Plaintiff contends that the ALJ ignored the "medical statement of Dr. Rooney" and improperly adopted the "checklist RFC" of the state agency reviewing physician.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).  Although RFC is a medical question, the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)).

In this case, the ALJ did not reject or discount Dr. Rooney's letter, as suggested by Plaintiff.[4] Rather, the ALJ reviewed the medical evidence and concluded that it was consistent with an RFC

_____

[4]In his decision, the ALJ erroneously attributed the letter to Dr. Holmes, the referring physician to whom Dr. Rooney addressed his letter. (Tr. 14.)

for the full range of medium work:

> The rationale for [the RFC] conclusion is that the claimant alleges disability due to arthritis in her knees, ankles, and hands; and pain, numbness, and swelling in her ankles and knees.  However, x-rays of the claimant's knees were normal.  She has never sought treatment for her alleged disabling pain, numbness, and swelling in her ankles or for her alleged arthritis in her hands.  In fact, the record reflects that she has sought very minimal treatment.  She alleges having undergone knee surgery, but the record fails to demonstrate that she has ever undergone knee surgery.  She takes no strong pain medications, but instead takes over-the-counter Aleve and Advil for her alleged disabling pain.  Although the claimant was observed to walk using a cane at the hearing, her only treating physician has not placed any restrictions on her ability to function or advised the claimant to use a cane.  Furthermore, the record shows that the claimant stopped working because she retired on her alleged onset date.  Moreover, she remains able to engage in rather robust activities of daily living such as grocery shopping, household chores, and working in the yard.  All of this is indicative that she retains the residual functional capacity to perform a full range of medium work.

(Tr. 16.)

While Plaintiff interprets Dr. Rooney's letter to indicate that she "could not perform the tasks required of medium work activity," the Court disagrees.  As noted by Dr. Rooney, x-rays of Plaintiff's knees were *normal*.  While Dr. Rooney's letter reflects that Plaintiff experienced some degree of pain, he treated her conservatively, placed her on exercise, and did not restrict her in any way.  Furthermore, the ALJ accounted for Plaintiff experiencing some degree of pain by finding that she could not perform her past relevant work.  Finally, in his decision, the ALJ correctly noted that Plaintiff: (1) never sought treatment for her allegedly disabling pain, numbness, swelling in her ankles, and alleged arthritis in her hands; (2) alleged that she underwent multiple knee surgeries, *none* of which were supported by the medical record; (3) has sought only minimal medical treatment; and (4) takes over-the-counter Aleve and Advil to control her pain, rather than any stronger prescription pain medication.  Thus, the Court concludes that substantial evidence supports the

ALJ's RFC assessment.

### 2.    The ALJ Erred In His Credibility Assessment

Second, Plaintiff argues that the ALJ erred in discounting her credibility because he did not

mention her positive work history of over thirty years.  While Plaintiff is correct that a longstanding

work history is a factor that weighs in favor of a claimant's credibility, Plaintiff cites to no authority

that an ALJ's failure to mention work history in his credibility analysis, standing alone, constitutes

reversible error.  *See Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007) ("It might have

been better if the ALJ had referred specifically to [the claimant's] work record when determining her

credibility . . . but we do not think that the ALJ was required to refer to every part of the record, and

we think that the portions of the record that he referred to were sufficient to support his credibility

determination.").

After reviewing the complete record, the Court concludes that the ALJ properly evaluated

Plaintiff's credibility using the factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320

(8th Cir.1984). His decision makes it clear that he took into account matters such as Plaintiff's daily

activities, medications, the precipitating/aggravating factors, and the medical record before deciding

that Plaintiff's subjective complaints were not fully credible. Therefore, the Court concludes that

Plaintiff's second argument is without merit.

### III.  Conclusion

It is not the task of this Court to review the evidence and make an independent decision.

Neither is it to reverse the decision of the ALJ because there is evidence in the record which

contradicts his findings.  The test is whether there is substantial evidence in the record as a whole

which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996),

*superceded by statute on other grounds*; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).  The

Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of

the hearing.  The Court concludes that the record as a whole contains ample evidence that "a

reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

*Richardson v. Perales*, 402 U.S. at 401; *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.

2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and

Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 17th day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE